**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wendy Johnson, | No. CV 14-2587-TUC-LAB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 11)

The court finds the final decision of the Commissioner must be reversed. The ALJ erred by failing to find that Johnson's carpal tunnel syndrome is a severe impairment. The case will be remanded for further proceedings.

PROCEDURAL HISTORY

Johnson filed her application for disability insurance benefits in March of 2011. (Tr. 23) She alleged disability beginning March 1, 2011 due to back, knee, and ankle impairment;

attention deficit hyperactivity disorder; headaches; diabetes; bipolar disorder; memory impairment; and depression. (Tr. 308)

Her claim was denied initially (Tr. 180-183) and upon reconsideration (Tr. 185-188). Johnson requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Speck Havens on April 25, 2013. (Tr. 55) In her decision, dated May 10, 2013, the ALJ found Johnson was not disabled. (Tr. 34) Johnson appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-6) Johnson subsequently filed this action appealing the Commissioner's final decision. (Doc. 1); (Tr. 1)

### Claimant's Work History and Medical History

Johnson was born in July of 1971. (Tr. 56) She has a high school diploma and two years of college. (Tr. 56) She worked as a clerk in a tax office, and she worked in a deli. (Tr. 59)

### Mental Impairments

In January of 2011, Thompson Prout, Ph.D., reviewed the medical record for the state disability determination service. (Tr. 131) He found evidence of an affective disorder, an anxiety disorder, and a personality disorder. (Tr. 131) Prout found Johnson's activities of daily living mildly restricted. *Id.* He opined she was moderately limited in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 131)

In July of 2011, Raymond Novak, M.D., reviewed the medical record for the state disability determination service. (Tr. 147) He found evidence of an affective disorder and an anxiety disorder. *Id.* He opined Johnson was moderately limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 150) Also, she was moderately limited in her ability to work with others, complete a normal workday and work week, maintain concentration, perform at a consistent pace, interact with the general public, accept instructions, interact with supervisors, and get along with coworkers. (Tr. 150-151)

In June of 2012, Randall J. Garland, Ph.D., reviewed the medical record for the state disability determination service. (Tr. 166) He found evidence of an affective disorder and an anxiety disorder. *Id.* Garland opined that Johnson's activities of daily living were mildly restricted. *Id.* Also, she was moderately limited in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 166)

Physical Impairments

In July of 2011, Jerry Dodson, M.D., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Tr. 148-149) He concluded Johnson could lift and/or carry 20 pounds occasionally and 10 pounds frequently. (Tr. 148) She could stand or walk for about four hours and sit for about six hours in an 8-hour work day. (Tr. 148) She was limited in her lower extremities due to left knee and right ankle surgery. *Id.* She should never crouch, crawl, or climb ladders, ropes, or scaffolds. And she should only occasionally balance, kneel, or climb ramps or stairs. *Id.* She should avoid concentrated exposure to extreme cold, vibration, and hazards such as machinery or heights. (Tr. 149)

In July of 2012, Linda A. Woodard, D.O., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Tr. 154, 167) She concluded Johnson could lift and/or carry 20 pounds occasionally and 10 pounds frequently. (Tr. 168) She could stand or walk for about three hours and sit for about six hours in an 8-hour work day. (Tr. 168) She was limited in her lower extremities due to left knee and right ankle surgery. *Id.* She should never crouch or crawl and should only occasionally kneel or climb ramps or stairs. *Id.* She should avoid even moderate exposure to hazards such as machinery or heights. (Tr. 169)

Hearing Testimony

On April 25, 2013, Johnson appeared with counsel at a hearing before ALJ Laura Speck Havens. (Tr. 55)

1  Johnson testified that she has not worked since March 1, 2011, her alleged onset date.
2  (Tr. 57-58)  She suffers from degenerative disc disease, headaches, diabetes, COPD, bipolar
3  disorder, depression, and ADHD.  (Tr. 58)

4  In the past, Johnson worked in a tax office doing clerical work.  (Tr. 59)  She received
5  unemployment benefits, but she was required to return some of the money because she could
6  not work and was not eligible.  (Tr. 58)

7  On a typical day, Johnson rises at 11:00 a.m.  (Tr. 59)  She can dress and bathe herself
8  without help.  (Tr. 59-60)  She watches television five or six hours per day.  (Tr. 60)  She does
9  not exercise.  (Tr. 60)  She attends church once a month.  (Tr. 61)

10  Johnson explained she has trouble sleeping, and she hears voices.  (Tr. 63)  She can walk
11  for one half hour and stand for one hour.  (Tr. 63)  She can sit for about 15 minutes before she
12  has to get up due to lower back pain.  (Tr. 64)   She has pain in her lower back, ankle, and left
13  knee.  (Tr. 64)  She also has headaches nine or 10 times per month.  (Tr. 64)

14  People make Johnson anxious.  (Tr. 65)  She thinks they are out to get her, and she hears
15  voices.  (Tr. 65)  Her depression, the voices, and her pain keep her from staying focused.  (Tr.
16  68)

17  Ruth Van Fleet testified as a vocational expert.  (Tr. 69)  She explained that Johnson's
18  previous job as a deli worker was medium unskilled work.  (Tr. 70)  Her tax preparation work
19  was sedentary and semi-skilled.  *Id*.

20  Van Fleet opined that a person who is 41 years old with a high school education and two
21  years of college, who could sit for six hours, stand for three hours, walk for three hours, who
22  could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, who should
23  never climb ladders or crouch or crawl, who should only occasionally climb stairs and kneel,
24  who must avoid concentrated exposure to heights, machinery, dust, fumes, smoke and
25  temperature extremes, who can remember and carry out simple job instructions only, and can
26  only occasionally deal with the public could not perform Johnson's past relevant work.  (Tr. 70-
27  71)  She could, however, work as an  assembler, DOT (Dictionary of Occupational Titles)
28  725.684-018, or electronic equipment assembler, DOT 726.687-030.  (Tr. 70-71)

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 5 -

1 gainful work in the national economy in view of claimant's age, education, and work
2 experience. 20 C.F.R. § 404.1520(a)(4).

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Johnson "has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date." (Tr. 26) At step two, she found Johnson "has the following severe impairments: degenerative disc disease, headaches, diabetes, obesity, COPD, bipolar disorder, depression, and attention deficit hyperactivity disorder (ADHD)." (Tr. 26) At step three, the ALJ found Johnson's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 26)

The ALJ then analyzed Johnson's residual functional capacity (RFC). She found Johnson "has the residual functional capacity to perform a wide range of sedentary work . . . except the claimant is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to sitting six hours, standing three hours, and walking three hours; is limited to occasional pushing-pulling with the lower extremities; is limited to occasionally climbing stairs [and] kneeling, can never climb ladders, crouch, and crawl; must avoid concentrated exposure to heights, moving machinery, dust, fumes, smoke, and temperature extremes; is limited to understanding and carrying out simple job instructions; and is limited to occasionally dealing with the public." (Tr. 29)

At step four, the ALJ found Johnson is not able to perform her past relevant work. (Tr. 32) At step five, she found Johnson can work as an assembler, DOT 725.684-018, or electronic assembler, DOT 726.687-030. Accordingly, she found Johnson was not disabled. (Tr. 33)

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a

- 6 -

1  continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "[A] claimant will be
2  found disabled only if the impairment is so severe that, considering age, education, and work
3  experience, that person cannot engage in any other kind of substantial gainful work which exists
4  in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

5  The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The
6  decision to deny benefits "should be upheld unless it contains legal error or is not supported by
7  substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence
8  is defined as "such relevant evidence as a reasonable mind might accept as adequate to support
9  a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

10  "Where evidence is susceptible to more than one rational interpretation, the ALJ's
11  decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider
12  the entire record as a whole and may not affirm simply by isolating a specific quantum of
13  supporting evidence." *Id.*

14  In evaluating evidence to determine whether a claimant is disabled, the opinion of a
15  treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
16  1993). The ALJ may reject a treating physician's uncontradicted opinion only if she sets forth
17  clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).
18  If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that
19  opinion only if she provides specific and legitimate reasons supported by substantial evidence
20  in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as
21  to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez
22  v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

23  "The opinion of an examining physician is, in turn, entitled to greater weight than the
24  opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
25  "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
26  uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,
27  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
28  that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

Johnson argues in her opening brief, among other things, that the ALJ erred at step two of the disability analysis by failing to find her carpal tunnel syndrome a severe impairment. The court agrees and will remand for further proceedings. The court does not reach Johnson's alternate allegations of error.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment . . . can be found 'non severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (internal punctuation modified); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when [her] conclusion is 'clearly established by medical evidence.'").

The regulations explain that a severe impairment "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include, among other things, "[p]hysical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or *handling*. 20 C.F.R. § 404.1521(b)(1) (emphasis added).

The medical record in this case contains treatment records from Stephen A. Shapiro, M.D., documenting examination and treatment for right wrist pain. (Tr. 1619- 1625, 1628-1629) In July of 2012, Johnson complained of "numbness and tingling in a stocking and glove distribution from her mid forearm to her fingertips." (Tr. 1628) She had a positive Tinel's sign indicating nerve damage. (Tr. 1625); The Merck Manual of Diagnosis and Therapy 1491 (17th ed. 1999). Shapiro ordered nerve conduction studies and an MRI. (Tr. 1619- 1625, 1628-1629) Johnson has received cortisone injection, physical therapy, and bracing, but she reports her pain was not helped by these treatments. (Tr. 1620) In August of 2012, Eugene Y. Mar, M.D., diagnosed "mild bilateral carpal tunnel syndrome" based on nerve conduction studies. (Tr. 1621)

Based on the medical record, it appears that Johnson's carpal tunnel syndrome has more than a minimal effect on her ability to do basic work activities such as handling. Or to use *Webb's* formulation of the rule, the ALJ's implicit conclusion that Johnson's carpal tunnel syndrome is not severe is not "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Accordingly, the ALJ committed error by failing to find that Johnson's carpal tunnel was a severe impairment.

The Commissioner correctly points out that this error would be harmless if the ALJ considered the effect of Johnson's carpal tunnel later in the disability analysis when analyzing her residual functional capacity (RFC). (Doc. 18, p. 5); *see, e.g., Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). It does not appear, however, that she did that. In the hypothetical presented to the vocational expert, the ALJ adopted all the physical limitations listed by the non-examining consultant physician, Linda A. Woodard, D.O. (Tr. 167-169) Woodard, however, did not consider whether Johnson's handling was limited by her carpal tunnel syndrome because those medical records were not available when Woodard made her recommendation in June of 2012. *See* (Tr. 157-162, 167-169, 1610) It appears that the carpal tunnel treatment records, B34F, were included in the record some time after March of 2013. *Id.* By adopting Woodard's

opinion without further review of the record, it appears that the ALJ failed to consider the effect that the carpal tunnel syndrome has on Johnson's functional limitations. *See Godin v. Astrue*, 2013 WL 1246791, 2 (D.Conn. 2013) ("The applicable regulations provide that every medical source received by the Commission will be considered in evaluating a disability claim.").

This error is particularly important because at step five of the disability analysis, the ALJ found that Johnson could perform the job of assembler or electronic assembler. (Tr. 33) It seems likely that those jobs would ordinarily require "a high level of finger dexterity and frequently handling and fingering." *Betsey v. Astrue*, 2008 WL 5231839, 4 (M.D.Fla. 2008). It is therefore possible that Johnson's carpal tunnel syndrome could affect her ability to perform those jobs. At the very least, her condition could limit the number of those jobs available to her.

The Commissioner further argues that Johnson failed to affirmatively establish that her impairment results in specific functional limitations affecting her ability to work. At step-five of the disability analysis, however, the Commissioner has the burden of proving that Johnson can perform work that exists in significant numbers in the national economy. *Bruton v. Massanari*, 268 F.3d 824, 828 n. 1 (9th Cir. 2001). She did not do that here. The ALJ should expand the record to determine if Johnson's carpal tunnel syndrome affects her ability to work. *See, e.g., Parsons v. Colvin*, 2013 WL 5310265, 11 (D.Or. 2013) ("On remand, the ALJ should better develop the record regarding what, if any, manipulative, handling and/or fingering limitations the bilateral carpal tunnel syndrome caused for Parsons.").

Johnson argues that if the decision of the Commissioner is reversed, then the case should be remanded for computation of benefits. Here, however, it is not clear from the record that Johnson is indeed disabled. The case therefore will be remanded for further proceedings. *See Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014).

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for further proceedings.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 7th day of October, 2015.

1
2
3    _____
     Leslie A. Bowman
4    United States Magistrate Judge
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28